ENESCO CORPORATION, an Ohio corpo-
ration; Precious Moments, Incorporat-
ed, an Illinois corporation, Plaintiffs–
Appellants,

v.

PRICE/COSTCO INC., a Delaware
corporation, Defendant–
Appellee.

No. 96–56571.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1997.

Decided June 22, 1998.

**1084**

John J. Held, McAndrews, Held & Malloy, Ltd., James P. White, Welsh & Katz, Ltd., Chicago, Illinois, for plaintiffs-appellants.

Norman H. Levine, Greenberg Glusker Fields Claman & Machtinger, LLP, Los Angeles, California, Michael D. Sandler, Foster Pepper & Shefelman, Seattle, Washington, for defendant-appellee.

Before SCHROEDER and KOZINSKI, Circuit Judges, and WHYTE,* District Judge.

WHYTE, Judge.

Enesco Corporation ("Enesco") and Precious Moments, Incorporated ("PMI") brought suit against Price/Costco Inc. ("Price–Costco") for unfair competition under California Business and Professions Code sections 17200 *et seq.* and trademark infringement under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Enesco and PMI (collectively "Appellants") appeal the district court's judgment entered following its order granting Price/Costco's motion to dismiss the action with prejudice. For the reasons set forth below, we reverse the district court's decision and remand.[1]

## I. BACKGROUND

Enesco is in the business of creating and marketing giftware products that are sold to consumers worldwide. Under an exclusive copyright and trademark license with PMI, Enesco markets a line of porcelain bisque figurines under the PMI-owned "Precious Moments" registered trademark. Because the figurines are made of porcelain bisque and because of their design, Appellants claim that they are fragile and must be specially and carefully packaged so they will not be broken, chipped or otherwise marred.

Since its introduction in 1978, the Precious Moments line has been Enesco's largest licensed line of figurines and apparently one of the world's largest selling collectible lines of figurines. Appellants claim that one of the reasons for the success of the Precious Moments figurines is the quality of the figurines, which is maintained by Enesco's monitoring and keeping a consistent level of quality in the Precious Moments figurines and in the packaging used for the figurines. Enesco uses specially created cartons and interpacking which it claims protects the figurines during transportation and storage.

To enhance the collectibility and quality image of its Precious Moments figurines, Enesco adopted a policy in the early 1980s limiting the sale of figurines to retailers who agree to devote in-store space to the display of the figurines and provide personalized services to the consumer-collectors. Enesco has never sold Precious Moments figurines directly to Price/Costco. Through widespread and favorable public acceptance and recognition, the trademark "Precious Moments" has become of substantial value to Enesco and PMI and is a recognized symbol of quality.

Without Appellants' consent, Price/Costco recently began selling Precious Moments figurines to its customers. However, the figurines are sold in different packaging. After each figurine is removed from its original Enesco outer carton, the figurine along with

---

* The Honorable Ronald M. Whyte, United States District Court for the Northern District of California, sitting by designation.

1. "An action for unfair competition under Cal. Bus. & Prof.Code §§ 17200 *et seq.* is 'substantially congruent' to a trademark infringement claim under the Lanham Act." *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1457 (9th Cir.1991) (citation omitted). Therefore, if the Lanham Act claim must be remanded for further proceedings, so must the unfair competition claim.

the carton is placed and sold in a clear, blister-pack type package that allegedly does not provide adequate protection from damage.

Appellants contend that they are unable to control the quality of the figurines as repackaged, displayed and sold by Price/Costco. As a result, they claim that the repackaged figurines sold by Price/Costco are no longer truly "genuine" Precious Moments figurines.

Price/Costco moved to dismiss Appellants' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claims are barred by the "first sale" doctrine, that the necessary "use in commerce" element is missing and that likelihood of confusion cannot be established as a matter of law.

The district court, without opinion, granted Price/Costco's motion and dismissed the action with prejudice.

## II. STANDARD OF REVIEW

■ A district court's order of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo. See Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). Our review is limited to the contents of the complaint. *Id.* All allegations of material fact in the complaint are taken as true and construed in the light most favorable to plaintiff. *Argabright v. U.S.*, 35 F.3d 472, 474 (9th Cir.1994). The district court's order of dismissal will be affirmed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

## III. DISCUSSION

■ Section 32 of the Lanham Act provides the registered owner of a trademark with an action against anyone who without consent uses a "reproduction, counterfeit, copy, or colorable imitation" of the mark in such a way that "is likely to cause confusion or to cause mistake, or to deceive." [2] *See* 15

U.S.C. § 1114(1). Similarly, section 43(a) provides for civil liability if goods are marketed bearing "a false designation of origin." *See* 15 U.S.C. § 1125(a)(1).

■ A trademark owner's right under the Lanham Act to control distribution of its own products is limited by the "first sale" doctrine. *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir.1995). Under the doctrine, resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition. *See id.* The reason behind the rule "is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir.1987) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368–69, 44 S.Ct. 350, 351, 68 L.Ed. 731 (1924); *Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp.*, 707 F.2d 1054, 1058 (9th Cir. 1983)).

Appellants argue that the "first sale" doctrine does not bar their claim because Price/Costco's resale of the Precious Moments trademarked products falls under the "repackaging notice" exception created by the Supreme Court in *Prestonettes, Inc. v. Coty* and also under the "potential defect" or "quality control" exception.

### A. "Repackaging Notice" Exception

■ Appellants contend that under *Coty*, Price/Costco can be held liable under trademark law because it fails to disclose on the product that the repackaging was done by Price/Costco and not Enesco. They assert that Supreme Court precedent requires such informative, public disclosure. We agree based upon the facts alleged.

In *Coty*, Coty brought a trademark infringement action alleging that Prestonettes had unlawfully used Coty's trademarks "Coty" and "L'Origan" in selling genuine

---

**2.** It seems clear that defendant's use of Appellants' trademark constitutes a "use in commerce," as defendant is selling the repackaged and allegedly defective or potentially defective

figurines with Appellants' trademark. *See Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 135–36 (D.Colo.1980).

Coty powder and perfume in repackaged form. After purchasing Coty powder, Prestonettes subjected it to pressure, added a binder for coherence and sold it in a metal case. After purchasing Coty perfume in bottles, Prestonettes poured the perfume into smaller bottles, which it then sold. Coty's complaint did not allege that Prestonettes had adulterated or otherwise caused deterioration of Coty's product, although it did intimate that metal containers were not desirable for the powder. *Coty*, 264 U.S. at 367, 44 S.Ct. at 351.

The Court of Appeals assumed that Prestonettes handled Coty's product without injuring its qualities in any way. However, the court considered the perfume's delicate nature, easy deterioration and opportunities for adulteration and issued an injunction against the use of plaintiff's trademarks even though the labels disclosed Prestonettes' repackaging.[3] The Supreme Court reversed and upheld the district court's decree which allowed Prestonettes to sell the repackaged products, provided it included the disclosure labels. Prestonettes "by virtue of its ownership had a right to compound or change what it bought, to divide either the original or the modified product, and to sell it so divided," as long as the public was not deceived about Prestonettes' involvement. *See Coty*, 264 U.S. at 368, 44 S.Ct. at 351. The Court explained that:

A trade mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his.

\*      \*      \*      \*      \*      \*

When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.

\*      \*      \*      \*      \*      \*

If the defendant's rebottling the plaintiff's perfume deteriorates it *and the public is adequately informed who does the bottling,* the public, with or without plaintiff's assistance, is likely to find it out. And so of the powder in its new form.

*Id.* at 368–69, 44 S.Ct. 350 (emphasis added) (citations omitted).

■      Here, Price/Costco does not disclose to the public that it has repackaged Enesco's original product. This may cause confusion by the public as to Price/Costco's role in repackaging the figurines in allegedly inadequate, clear plastic blister packs. As a result, Enesco and PMI may be entitled to an injunction prohibiting the sale of the figurines without an appropriate repackaging notice. Such an injunction would be necessary to protect against public confusion about Price/Costco's involvement.[4]

Although Appellants' complaint does not specifically request that Price/Costco be required to publicly disclose its repackaging of the product, we construe the complaint broadly and reverse the district court's order of dismissal since it appears from the face of the complaint that some relief could be granted. *See Summit Tech. v. High–Line Medical Instruments Co., Inc.,* 922 F.Supp. 299, 305 (C.D.Cal.1996).

---

**3.** The rebottled perfume contained the following label:

> Prestonettes, Inc., not connected with Coty, states that the contents are Coty's [giving the name of the article] independently rebottled in New York.

The repackaged powder contained the following label:

> Prestonettes, Inc., not connected with Coty, states that the compact of face powder herein was independently compounded by it from Coty's [giving the name] loose powder and its own binder. Loose powder-per cent., Binder-per cent.

Every word was "to be in letters of the same size, color, type and general distinctiveness." *Coty*, 264 U.S. at 367, 44 S.Ct. at 351.

**4.** Under the authority of the COTY case, the courts have required a repacker ... to use a label closely following the label approved in the COTY case. That is, the label, if it is to use the trademark of the original manufacturer, must clearly state: (1) that the trademarked product has been ... repacked; (2) that the ... repacker is wholly separate and distinct from the original manufacturer; (3) the name of the ... repacker. A fourth requirement is that the label not emphasize the original manufacturer's trademark by putting it in larger type, different color or size, etc.

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:35 (4th ed.1996).

## B. "Quality Control" Exception

Appellants also contend that they have stated a claim for trademark infringement due to their inability to maintain proper quality control of the figurines sold by Price/Costco.

■ Under the quality control theory, largely developed by the Second Circuit, "[d]istribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image." *Warner–Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3, 6 (2d Cir.1996); *see also El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.,* 806 F.2d 392, 395 (2d Cir.1986) ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark."). If this occurs, "the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement." *Warner–Lambert,* 86 F.3d at 6 (citations omitted).

Courts have recognized the quality control argument in trademark infringement cases where there is "some defect (or potential defect) in *the product itself* that the customer would not be readily able to detect." *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 591 (5th Cir.1993) (emphasis in original); *see, e.g., Shell Oil Co. v. Commercial Petroleum, Inc.,* 928 F.2d 104 (4th Cir.1991) (defendant prohibited from selling oil under Shell trademarks because Shell's stringent tank and pump cleaning requirements not observed); *El Greco,* 806 F.2d 392 (infringement found where shoes sold by defendant did not go through plaintiff's quality inspection); *Adolph Coors,* 486 F.Supp. 131 (beer not genuine Coors product where unauthorized distributor did not maintain required refrigeration).

■ Appellants contend that even if Price/Costco's repackaging were disclosed, they would not be able to control the quality of the figurines as they are sold and displayed by Price/Costco. Specifically, Appellants assert that Price/Costco's inadequately protective repackaging exposes the figurines to breakage or chipping that may go unde-tected by the consumer, especially since the potential customers are not able to handle and examine the figurines in the store. As a result, customer dissatisfaction with the quality of the figurines, and thus the Precious Moments line, may result.

Appellants' contention seeks to push the quality control exception beyond its reasonable limit. The critical issue is whether the public is likely to be confused as a result of the lack of quality control. As noted above, the "quality control" cases where trademark infringement has been found all involved some defect (or potential defect) in the product itself that the customer would not be readily able to detect.

> The oil, shoes, and beer from *Shell, El Greco,* and *Coors* all contained or could potentially contain a latent product defect due to the unauthorized distributor's failure to observe the manufacturer and mark owner's rigorous quality control standards. Most importantly, a consumer would not necessarily be aware of the defective condition of the product and would thereby be confused or deceived.

*Matrix,* 988 F.2d at 591.

If the public were adequately informed that Price/Costco repackaged the figurines and the figurines were subsequently chipped, the public would not likely be confused as to the cause of the chipping. *See Coty,* 264 U.S. at 369, 44 S.Ct. 350 ("If the defendant's rebottling the plaintiff's perfume deteriorates it and the public is adequately informed who does the rebottling, the public, with or without plaintiff's assistance, is likely to find it out."). In light of the unlikelihood of consumer confusion, the quality control exception to the "first sale" doctrine does not apply to this case.

Since Appellants may be entitled to some relief on their claim that Price/Costco failed to give adequate notice of repackaging, the judgment of dismissal is vacated and the decision of the district court is REVERSED and the case is REMANDED for further proceedings.