[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

—————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2001
THOMAS K. KAHN
CLERK

No. 00-14368

—————————————

D. C. Docket No. 00-02635-CV-DMM

DAVIDOFF & CIE, SA, a Swiss Corporation, and
LANCASTER GROUP US LLC, a Delaware
Limited Liability Corporation,

Plaintiffs-Appellees,

versus

PLD INTERNATIONAL CORPORATION, a Florida
Corporation, and PHILLIPE L. DRAY,
an individual Florida resident,

Defendants-Appellants.

—————————————

Appeal from the United States District Court
for the Southern District of Florida

—————————————

**(August 28, 2001)**

Before ANDERSON, Chief Judge, FAY and BRIGHT*, Circuit Judges.

ANDERSON, Chief Judge:

———————————

*Honorable Myron H. Bright, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

This case appears to be the first time that this circuit has addressed the circumstances under which the resale of a genuine product with a registered trademark can be considered infringement. We recognize the general rule that a trademark owner's authorized initial sale of its product exhausts the trademark owner's right to maintain control over who thereafter resells the product; subsequent sales of the product by others do not constitute infringement even though such sales are not authorized by the trademark owner. However, we adopt from our sister circuits their exception to this general rule–i.e., the unauthorized resale of a materially different product constitutes infringement. Because we conclude that the resold products in the instant case are materially different, we affirm.

## I. BACKGROUND

Davidoff & Cie, S.A., a Swiss corporation, is the manufacturer of DAVIDOFF COOL WATER fragrance products and owns the U.S. trademark. Davidoff & Cie, S.A. exclusively licenses Lancaster Group US LLC (collectively "Davidoff") to distribute its products to retailers in the United States. Working outside of this arrangement, PLD International Corporation ("PLD") acquires DAVIDOFF fragrances that are intended for overseas sale or that are sold in duty-

free sales. PLD then distributes them to discount retail stores in the United States.

At the time that PLD acquires the product, the original codes on the bottom of the boxes are covered by white stickers, and batch codes on the bottles themselves have been obliterated with an etching tool. The etching leaves a mark on the bottle near its base on the side opposite the DAVIDOFF COOL WATER printing. The mark is approximately one and one-eighth inches in length and one-eighth of an inch wide. The batch codes are removed, according to PLD, to prevent Davidoff from discovering who sold the fragrances to PLD because Davidoff would stop selling to those vendors.

## II. DISTRICT COURT PROCEEDINGS

Davidoff filed a complaint seeking, <u>inter alia</u>, a preliminary injunction against PLD[1] for infringement of its trademark under the Lanham Trade-Mark Act, 15 U.S.C. § 1051 <u>et seq.</u>[2] Davidoff alleged that PLD's distribution of the

---

[1]PLD and its principle, Phillipe L. Dray, were sued. We refer to them collectively as "PLD."

[2]Section 32 of the Lanham Act provides:

(1) Any person who shall, without consent of the registrant–

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .

3

fragrances with the batch codes removed and obliterated constituted infringement. The district court held that PLD's distribution of DAVIDOFF fragrances constituted infringement by creating a likelihood of consumer confusion. In reaching this conclusion, the district court found that the product distributed by PLD differed from the genuine DAVIDOFF product because the removal of the batch code from the bottle by etching the glass "constitutes alteration of a product,"[3] which would create a likelihood of consumer confusion. A consumer might believe that a product had been harmed or tampered with.[4] Based on the

shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1). Similarly, section 43(a)(1) of the Lanham Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, . . .

shall be liable in a civil action . . . .

15 U.S.C. § 1125(a)(1).

[3]Record 3:63 (August 10, 2000, evidentiary hearing on the preliminary injunction).

[4]The district court also based its finding of infringement on the fact that the removal of the batch code interfered with DAVIDOFF's quality control system. Although the lack of quality control can rise to the level of a material difference from the trademark owner's product and create a likelihood of confusion, see Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 7 (2d Cir. 1996), we need not address the district court's findings in this regard because we

4

infringement finding, the district court granted a preliminary injunction, prohibiting PLD from selling, repackaging or altering any product with the name "DAVIDOFF" and/or "COOL WATER" with an obliterated batch code. This appeal followed.

## III. CONTENTIONS

PLD argues that it is selling genuine DAVIDOFF fragrances and that as a result no consumer can be confused. Therefore, it claims that it cannot be considered an infringer under the Lanham Act. PLD asserts that "[w]ith or without a manufacturer or batch code on its packaging, the product is absolutely the same." PLD states that the district court incorrectly relied on cases where the product itself and not just the packaging was altered.

Davidoff urges us to adopt a material difference test whereby a material difference between goods sold under the same trademark warrants a finding of consumer confusion. Davidoff argues that the obliteration of batch codes by PLD transforms the appearance of its product into a materially different, infringing product, which is likely to confuse consumers.

conclude that the physical differences in PLD's product create a likelihood of consumer confusion and support the district court's infringement finding. See infra Part VI.

## IV.  PRELIMINARY INJUNCTION POSTURE

We review a district court's order granting or denying a preliminary injunction for abuse of discretion.  McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).   A party seeking a preliminary injunction for trademark infringement must establish four elements: (1) substantial likelihood of success on the merits; (2) that it would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury to the trademark owner outweighs the whatever damage the injunction may cause to the alleged infringer; (4) that the injunction, if issued, would not be adverse to the public interest.  See id.  It is well established in this circuit that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to all four elements.  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (internal citation omitted).  The issues raised by PLD in this case primarily address the first element: substantial likelihood of success on the merits.

## V.  TRADEMARK INFRINGEMENT:  LAW

In order to succeed on the merits of a trademark infringement claim, a plaintiff must show that the defendant used the mark in commerce without its consent and "that the unauthorized use was likely to deceive, cause confusion, or

result in mistake." McDonald's Corp., 147 F.3d at 1307.  Generally speaking, the determination boils down to the existence vel non of "likelihood of confusion." AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1538 (11th Cir. 1986).

A.     Purpose

To understand what type of consumer confusion is actionable under the Lanham Trade-Mark Act, it is useful to review Congress' purposes for enacting trademark legislation.  Congress sought to protect two groups:  consumers and registered trademark owners.  See S. Rep. No. 1333, 19th Cong. 2d Sess., reprinted in 1946 U.S. Code Cong. Serv. 1274.  In protecting these groups lawmakers recognized that "[e]very product is composed of a bundle of special characteristics."  Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 636 (1st Cir. 1992) ("Nestle").  Consumers who purchase a particular product expect to receive the same special characteristics every time.  See id.  The Lanham Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused or misled.  See 15 U.S.C. § 1114(1); S. Rep. No. 100-515, at 4 (1988), reprinted in 1988 U.S.C.C.A.N. 5577, 5580.  Thus trademark law ensures consistency for the benefit of consumers.  See Nestle, 982 F.2d at 636; Original

7

Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68, 75 (2d Cir. 1987) (Cardamone, J., concurring).

The Lanham Act also protects trademark owners. See S. Rep. No. 100-515 at 4. A trademark owner has spent time, energy and money in presenting a product to the public and building a reputation for that product. See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024 (1942); S. Rep. No. 1333, reprinted in 1946 U.S. Code Cong. Serv. 1274. The Act prevents another vendor from acquiring a product that has a different set of characteristics and passing it off as the trademark owner's product. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 778, 112 S. Ct. 2753, 2762 (1992) (Stevens, J., concurring) (noting that passing off is a form of infringement prohibited by the Lanham Act). This would potentially confuse consumers about the quality and nature of the trademarked product and erode consumer goodwill. See Iberia Foods Corp. v. Romeo, 150 F.3d 298, 303 (3d Cir. 1998); Nestle, 982 F.2d at 638.


B.   Resale of a Genuine Trademarked Product and the Material
      Difference Exception

The resale of genuine trademarked goods generally does not constitute infringement. See, e.g., Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., 988

8

F.2d 587, 590 (5th Cir. 1993); NEC Electronics v. CAL Circuit Abco, 810 F.2d 1506, 1509 (9th Cir. 1987). This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale. See Enesco Corp v. Price/Costco Inc., 146 F.3d 1083, 1085 (9th Cir. 1998) (quoting NEC, 810 F.2d at 1509). Under what has been sometime been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product. See Iberia Foods, 150 F.3d at 301 n.4; Enesco, 146 F.3d at 1085; Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1447-48 (11th Cir. 1998). Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act.

This doctrine does not hold true, however, when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner. Our sister circuits have held that a materially different product is not genuine and therefore its unauthorized sale constitutes trademark infringement. See Nestle, 982 F.2d at 644 (1st Cir.); Original Appalachian Artworks, 816 F.2d at 73 (2d Cir.); Iberia Foods, 150 F.3d at 302-3 (3d Cir.); Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co., 112 F.3d 1296, 1302 (5th Cir. 1997); cf. Enesco, 146 F.3d at 1087 (9th Cir.) (quoting Warner-Lambert Co. v. Northside

9

Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996)) (noting that a non-conforming product is not genuine and "its distribution constitutes trademark infringement"). We follow our sister circuits and hold that the resale of a trademarked product that is materially different can constitute a trademark infringement.[5] This rule is consistent with the purposes behind the Lanham Act, because materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. See Iberia Foods, 150 F.3d at 303; Nestle, 982 F.2d at 638.

Not just any difference will cause consumer confusion. A material difference is one that consumers consider relevant to a decision about whether to purchase a product. See Martin's Herend Imports, 112 F.3d at 1302; Nestle, 982 F.2d at 641. Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle

_____

[5]PLD argues that the material difference test only applies to so-called gray-market goods: foreign made goods bearing a trademark and intended for sale in a foreign country, but that are subsequently imported into the United States without the consent of the U.S. trademark owner. We reject this argument and join the Third Circuit in noting that infringement by materially different products "is not limited to gray goods cases . . . . The same theory has been used to enjoin the sale of domestic products in conditions materially different from those offered by the trademark owner." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998). Indeed, several courts have held that the purchase and resale of goods solely within the United States may constitute infringement when differences exist in quality control or the products themselves. See Enesco Corp. v. Price/Costco Inc., 146 F.3d 1083 (9th Cir. 1998); Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3 (2d Cir. 1996); Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., 988 F.2d 587 (5th Cir. 1993); Shell Oil Co. v. Commercial Petroleum Inc., 928 F.2d 104 (4th Cir. 1991).

differences between products.  See Iberia Foods, 150 F.3d at 304; Nestle, 982 F.2d at 641.

The caselaw supports the proposition that the resale of a trademarked product that has been altered, resulting in physical differences in the product, can create a likelihood of consumer confusion.  Such alteration satisfies the material difference exception and gives rise to a trademark infringement claim.  Nestle, 982 F.2d at 643-44 (applying the material difference exception, e.g., differences in the composition, presentation and shape of premium chocolates); Original Appalachian Artworks, 816 F.2d at 73 (applying the material difference exception where the infringing Cabbage Patch Kids dolls had Spanish language adoption papers and birth certificates, rather than English).

## VI.  APPLICATION OF THE EXCEPTION IN THIS CASE

The district court found that etching the glass to remove the batch code degrades the appearance of the product and creates a likelihood of confusion.  In addition, the court credited testimony of the marketing vice-president that the etching may make a consumer think that the product had been harmed or tampered with.  We defer to the district court's finding that the etching degrades the appearance of the bottle.  This finding is not clearly erroneous in light of the

stylized nature of the fragrance bottle, which has an otherwise unblemished surface. Indeed, based on our own examination and comparison of the genuine fragrance bottle and the bottle sold by PLD, we agree with the district court that a consumer could very likely believe that the bottle had been tampered with. We agree with the district court that this alteration of the product could adversely affect Davidoff's goodwill, creates a likelihood of consumer confusion, satisfies the material difference exception to the first sale doctrine, and thus constitutes a trademark infringement. We believe that the material difference in this case is comparable to, or more pronounced than, the product differences in Nestle and Original Appalachian Artworks where the First and Second Circuits applied the material difference exception and found trademark infringement.

PLD directs us to two cases, Graham Webb International Ltd. Partnership v. Emporium Drug Mart, Inc., 916 F. Supp. 909 (E.D. Ark. 1995), and John Paul Mitchell Systems v. Randalls Food Markets, Inc., 17 S.W.3d 721 (Tex. App. 2000), where courts have held that the removal of batch codes on hair care products does not constitute infringement. They are both distinguishable from the instant case. Neither court found that the removal affected the overall appearance of the product to the extent that it might be material to a consumer decision to purchase the product. In Graham Webb, the court noted that the removal of batch

codes resulted in "almost imperceptible scratches" that were not likely to confuse consumers. 916 F. Supp. at 916. And in Randalls Food Markets, the court stated that "there was no evidence that removal of the batch codes defaced the bottles." 17 S.W.3d at 736. In the instant case, the etching on the fragrance bottle is more than almost imperceptible scratches. Indeed, the district court credited testimony that consumers may regard the bottles as harmed or tampered with. We agree with the district court that the physical difference created by the obliteration of the batch code on PLD's product constitutes a material difference. See John Paul Mitchell Systems v. Pete-N-Larry's Inc., 862 F. Supp. 1020, 1027 (W.D.N.Y. 1994) (concluding that removal of batch codes from bottles of hair care products, leaving noticeable scars on the bottles and erasing some of the information printed, constitutes a material difference).

PLD also attempts to cast the effect of the etching as minimal. PLD argues that the etching is on the back side of the bottle beneath several lines of printing that identifies the manufacturer and distributor, country of origin and volume, while the front side contains the trademarks in gold and black script letters. This may be true, but the etching is clearly noticeable to a consumer who examines the bottle. At oral argument, PLD argued that only the packaging but not the product itself–i.e., the liquid fragrance inside the bottle–had been altered by the etching. In

13

marketing a fragrance, however, a vendor is not only selling the product inside the bottle, it is also selling the "commercial magnetism" of the trademark that is affixed to the bottle. Mishawaka Rubber, 316 U.S. at 205, 62 S. Ct. at 1024. The appearance of the product, which is associated with the trademark, is important to establishing this image. This makes the appearance of the bottle material to the consumer decision to purchase it. Because the etching degrades the appearance of the bottles, the DAVIDOFF fragrance that PLD distributes is materially different from that originally sold by Davidoff. Therefore, we agree with the district court that PLD's sale of this materially different product creates a likelihood of confusion, and satisfies Davidoff's burden of establishing a likelihood of success on the merits.

## VII.  OTHER ELEMENTS OF A PRELIMINARY INJUNCTION

Next, we examine the remaining three elements required for a preliminary injunction. On the irreparable injury element, we note that our circuit has stated that "'a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm.'" McDonald's Corp., 147 F.3d at 1310 (quoting E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, 756 F.2d 1525, 1530 (11th Cir.

14

1985)).  PLD's only argument against a finding of irreparable injury is that Davidoff cannot show a likelihood of confusion.  Because we found a likelihood of consumer confusion and thus reject PLD's only argument against a finding of irreparable harm, and because the likelihood of confusion is substantial, we will not overturn the district court's finding of irreparable injury.

Regarding the balancing of potential harms, we agree with the district court that the probable loss of consumer goodwill for Davidoff outweighs the costs of delay that PLD will incur in not being able to sell DAVIDOFF fragrances without the batch codes until a decision on the merits.  As the district court found, PLD is able to continue selling other products and Davidoff products where the batch codes have not been removed.  Lastly, the injunction is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace.  See SunAmerica Corp. v. Sun Life Assurance Co. of Canada, 77 F.3d 1325, 1334 (11th Cir. 1996).

## VIII.  CONCLUSION

The district court correctly decided that Davidoff demonstrated a substantial likelihood of success on the merits by showing a likelihood of consumer confusion.  Davidoff has also met the other three elements necessary for a preliminary

injunction.  Accordingly, the district court's order granting a preliminary injunction is

**AFFIRMED.**