SWATCH S.A. a/k/a Swatch A.G.,
and the Swatch Group (U.S.)
Inc., Plaintiffs,

v.

NEW CITY INC., Defendant.

No. 06–20162–CIV.

United States District Court,
S.D. Florida.

Sept. 12, 2006.

Jacqueline M. James, Collen IP, Westchester County, NY, Brendan J. Reilly, Matthew C. Wagner, Collen Law Associates, Ossining, NY, Jess M. Collen, Andrew William Ransom, John Cyril Malloy, III, Malloy & Malloy, Miami, FL, for Plaintiffs.

Alejandro Brito, Roberto Zarco, Zarco Einhorn & Salkowski, Miami, FL, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

HUCK, District Judge.

THIS CAUSE is before the Court upon Plaintiffs Swatch S.A. ("Swatch") and The Swatch Group (U.S.) Inc.'s ("TSG") Motion for Summary Judgment, file July 20, 2006 [D.E. # 40]. The Court has considered the Motion and the submissions of the parties, and is duly advised in the premises.

### Background

Plaintiff Swatch is a manufacturer and seller of watches, watch parts, jewelry and electronics under a number of registered and common law trade marks. Plaintiff TSG is the exclusive distributor of Swatch's goods in the United States. Defendant New City Inc. ("New City" or "Defendant"), is a watch distributor that sells Swatch brand watches without Swatch's consent. Swatch and TSG have sued Defendant New City, Inc. for importing and selling their products without their consent and infringing upon their intellectual property rights. Plaintiffs seek summary judgment on three of its seven Counts against Defendant: Count I (Trademark Infringement); Count V (False Advertising); and Count VII (Copyright Infringement).

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992)). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 252, 106 S.Ct. 2505.

The moving party bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991). To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion. *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). On summary judgment, "the evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences ... in his favor."

*Four Parcels,* 941 F.2d at 1428 (internal quotations and citations omitted). With the foregoing standard in mind, the Court addresses Plaintiffs' Motion for Summary Judgment as it relates to the three Counts at issue.

## I. COUNT I—TRADEMARK INFRINGEMENT

Swatch owns several U.S. Trademarks on wristwatches it manufactures.[1] Defendant imports and sells wristwatches manufactured by Swatch, but is not authorized by Plaintiffs to do so. According to Plaintiffs, Defendant or another entity in its chain of distribution alters the packaging of the genuine Swatch watches Defendant sells. Swatch claims that Defendant's sale of such physically altered products constitutes trademark infringement prohibited by the Lanham Act, 15 U.S.C. § 1114(1)(a). Plaintiffs additionally claim that Defendant infringes upon their trademarks by selling watches with void warranties. Defendant argues that, regardless of the condition of the products' packaging, it imports and sells only *genuine* Swatch wristwatches. Defendant relies upon the "first sale" doctrine, which provides that resale by the first purchaser of an original article under the producer's trademark is not trademark infringement. Defendant further argues that the product warranties covering the Swatch brand watches it sells are valid and routinely honored by Swatch.

■ Under the Lanham Act, any person who shall, without consent of the registrant, "use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or ad-

vertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable" for infringement. 15 U.S.C. § 1114(1)(a). To establish trademark infringement under the Lanham Act, Plaintiffs must prove that Defendant used the mark in commerce without their consent and "that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307 (11th Cir.1998).

■ Generally, the resale of genuine trademarked goods, even if unauthorized, does not constitute trademark infringement. *Davidoff & Cie, S.A. v. PLD International Corp.,* 263 F.3d 1297, 1301 (11th Cir.2001)(citing *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 590 (5th Cir.1993); and *NEC Electronics v. CAL Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987)). This is because consumers of resold genuine goods are not confused as to the origin of the goods. *Id.* (citing *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998)). The origin of the goods does not change as a result of the resale. *Id.* Under what has been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first sale of its product. *Id.* (citing *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 301 (3d Cir.1998)).

■ The first sale doctrine, however, does not protect alleged infringers that sell trademarked goods that are "materially different" than those sold by the trademark owner. *Id.* at 1302. This is because materially different products that have the

---

1. The specific Trademark Registration Numbers at issue here are: 1,356,512; 1,849,657; 1,664,054; 1,938,930; 1,942,870 for the marks SWATCH, SWATCH SCUBA 200, IRONY, and SWATCH IRONY. Swatch is also the owner of subsisting common law trademarks on its SKIN and DIAPHANE marks. Swatch's applications for registration of these marks is currently pending before the United States Patent and Trademark Office.

same trademark may confuse consumers and erode consumer goodwill toward the mark. *Id.* (citing *Iberia Foods,* 150 F.3d at 303, and *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 636 (1st Cir.1992) ("*Nestle*")). A "material difference" is one that consumers consider relevant to a decision about whether to purchase a product. *Id.* (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA. Co.,* 112 F.3d 1296, 1302; and *Nestle,* 982 F.2d at 641). The threshold of materiality in this regard is low because a great number of considerations may influence consumer preferences. *Id.* (citing *Iberia Foods,* 150 F.3d at 304; and *Nestle,* 982 F.2d at 641).

Plaintiffs here claim that the Swatch watches sold by Defendant are "materially different" from genuine trademarked Swatch watches in two respects. First, Plaintiffs claim the watches sold by Defendant are sold in packages that have been stripped of product reference numbers, SKUs, bar codes and batch codes. Second, Plaintiffs claim that the warranties on watches sold by Defendant are void. Plaintiff's allege that its product warranties are only valid on watches sold by authorized vendors. Because Defendant is not an authorized Swatch dealer, it cannot validly endorse Swatch's warranty as required for the warranty to take effect.

In response, Defendant argues that the alterations on the packaging of the products it sells are minor and do not render the products materially different from the genuine products sold by Swatch. With regard to the product warranties, Defendant claims that the warranties are valid and indistinct from those accompanying any Swatch watch—regardless of its seller. Defendant notes that Swatch has routinely honored the warranties on watches it has sold.

■ Thus, the issue before the Court is whether differences between a Swatch watch sold by Defendant and one sold by Plaintiffs, if any, are differences that a consumer would consider relevant to his or her decision to buy the watch. If, in fact, Defendant is selling a product bearing Plaintiffs' trademark that is materially different from the genuine article, then Defendant is not entitled to rely on the first sale doctrine as a defense to Plaintiffs' claim of trademark infringement. Plaintiffs first argue that the removal of certain product information from the packages of watches sold by Defendant makes the products appear damaged, tampered or defaced, and renders the products materially different from genuine Swatch Watches. Defendant, on the other hand, argues that consumers may not even perceive, let alone base their purchasing decisions on the alleged physical alteration of the watches' packages. This disputed fact, i.e., the extent to which consumers would consider the condition and appearance of the packaging of a watch in deciding whether to buy the watch, is a genuine issue of material fact. Accordingly, summary judgment is inappropriate on Plaintiff's trademark infringement claim insofar as it is based on physical alterations of the watches' packaging.

■ As for the alleged difference in warranty coverage, Defendant denies that the warranties included with the watches it sells are void. Since the question of the warranty's coverage is one of contract interpretation, it is properly decided by the Court. *Battig v. Hartford Acc. and Indem. Co.,* 608 F.2d 119 (5th Cir.1979)(holding that absent a latent or patent ambiguity, the meaning of a contract is a matter of law to be decided by the court). The universal warranty card included with all Swatch watches advises purchasers that:

> Your Swatch watch is warranted by Swatch Ltd. for a period of twenty-four months from the date of purchase under

the terms and conditions of the warranty ... The warranty only comes into force if the warranty certificate is dated, fully and correctly completed and stamped by an official Swatch dealer.

 By its own unambiguous terms, the warranty is of no effect if the warranty card is not endorsed by an authorized dealer. The goods sold by Defendant, an unauthorized dealer, therefore, cannot qualify for coverage under the warranty. Defendant, however, argues that the warranty on the watches it sells is valid because Swatch has honored them in the past. Defendant apparently contends that, by previously honoring unendorsed warranty certificates, Swatch has permanently waived the requirement that an authorized dealer endorse the warranty certificate in order for the warranty to take effect. Swatch claims that it has honored unendorsed warranties in the past in order to avoid serious harm to its reputation and maintain the goodwill toward its brand. Swatch argues that its business decision to honor otherwise void warranties cannot shield Defendant from liability for trademark infringement. The Court agrees and finds that Swatch has not waived its right to demand a validly endorsed warranty certificate as a condition for coverage. *See Osawa & Co. v. B & H Photo,* 589 F.Supp. 1163 (S.D.N.Y.1984)(finding that a camera manufacturer that provided warranty coverage to consumers of camera's that lacked valid warranties did so not out of stupidity or neglect, but because its management perceived that dissatisfied purchasers of the company's cameras would damage the reputation of the company's trademark). Accordingly, the Court finds that the watches sold by Defendant are different from those sold by Plaintiffs in that the ones sold by Defendant lack warranty coverage. There remains the question, however, whether this intangible difference is material to a consumer's decision to purchase the watch. That question is one of material fact for a jury to decide. Thus, summary judgment is denied as to Count I.

## COUNT V—FALSE ADVERTISING

 Next, Plaintiffs claim that they are entitled to summary judgment on their claim of false advertising § 43(a)(1)(B) of the Lanham Act. Section 43(a) of the Lanham Act provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a).

To succeed on a claim of false advertising under § 43(a), Plaintiffs must prove that (1) Defendant's advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) Plaintiffs have been, or are likely to be, injured as a result of the false advertising. *See Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir.2004)(citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir.2002) and *United Industries Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir.1998))("*Clorox* ").

The first element of the Lanham Act test requires that the plaintiff show that the statements at issue were either "(1) commercial claims that are literally false as a factual matter" or "(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hickson*, 357 F.3d at 1261(citing *Clorox*, 140 F.3d at 1180). Plaintiffs claim that Defendant falsely advertised on its website and in direct communications with customers (i) that it is an authorized retailer/distributor of Swatch products, (ii) that the Swatch watches it sells and has sold are covered by a manufacturer's warranty, and (iii) that the products it sells are first quality, and not used, altered or counterfeit.

Plaintiffs claim that an employee of Defendant falsely represented to Plaintiff's private investigator that Defendant was an authorized seller of Swatch watches. Defendant, however, denies that it ever represented itself as an authorized retailer or distributor of Swatch watches. This conflict in the evidence presents a genuine issue as to a material fact and renders summary judgment inappropriate on this theory of liability. The same is true with respect to Plaintiff's claim that Defendant falsely advertised that the products it sells are first quality, and not used, altered or counterfeit. Defendant denies ever making any such representation and argues that the representation would nevertheless have been true because the watches it sells *are*, in fact, genuine and of original quality. The factual questions of whether Defendant made the statements at issue and, if so, whether the statements were accurate render summary judgment inappropriate on this aspect of Plaintiff's false advertising claim.

Plaintiffs' claim that Defendant's website falsely represents the watches sold are covered by a manufacturer's warranty, on the other hand, *does* satisfy the first element of a Lanham Act false advertising claim. In spite of Defendant's denial that it ever misrepresented that watches it sold were covered by a manufacturer's warranty, in the "frequently asked questions" section of its website, Defendant makes the following statement:

Q: Do the watches have a warranty?

A: Yes, The warranty is handled directly by the manufacturer.

Defendant argues that the foregoing is an accurate statement because product warranties are, in fact, "handled" by the manufacturer. This argument totally ignores the fact that the plausibly innocuous statement that the warranty is "handled directly by the manufacturer" is preceded immediately by the unambiguous statement, "Yes," "the watches have a warranty". As demonstrated above, the plain terms of Swatch's warranty only give the warranty effect if endorsed by an official Swatch dealer. Accordingly, Defendant's representation that the watches it sells "have a warranty" is false.

Having found that Defendant made an advertisement that was literally false, Plaintiffs need not put forth any evidence regarding the second element of their Lanham Act false advertising claim, i.e., whether the advertisement deceived, or had the capacity to deceive, consumers. *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir.2002)(citing *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir.1999)). However, Plaintiffs must still prove the third element of a Lanham Act false advertising claim, that the defendant's deception is likely to influence the purchasing decision. *Id.* at 1250 (citing *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir.2002)). This is es-

sentially a materiality requirement and is based on the premise that not all deceptions affect consumer decisions. *Id.*

A plaintiff may establish materiality by proving that the defendants misrepresented "an inherent quality or characteristic of the product." *Id.* (citing *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir.1997)). Defendant argues that Plaintiffs have failed to tender any evidence that it misrepresented an "inherent quality or characteristic" of Swatch watches. Implicitly, Defendant argues that a warranty is not an inherent quality or characteristic of a Swatch watch. Whether a warranty is an inherent quality or characteristic of a Swatch watch is a question of material fact precluding an entry of summary judgment. Plaintiffs have put forth evidence, in the form of statements from company representatives, that a warranty provides additional value to consumers and that Defendant thought the existence of a warranty so important as to note it on the "frequently asked questions" section of its website. While Plaintiffs have a very compelling argument, they have not put forth sufficient evidence so as to entitle them to judgement as a matter of law. Having failed to satisfy all the elements of their Lanham Act false advertisement claim, Plaintiffs are not entitled to summary judgement on Count V.

## COUNT VII—COPYRIGHT INFRINGEMENT

Finally, Plaintiffs claim that they are entitled to summary judgment on their claim of copyright infringement under 17 U.S.C. § 602(a). As the owner of U.S. registered copyrights over the watches it manufactures, Plaintiff Swatch has the exclusive right to distribute or authorize the distribution of its watches to the public. *See* 17 U.S.C. § 106(3). This exclusive right to distribute copyrighted works includes the exclusive right to import the

goods into the United States. *See* 17 U.S.C. § 602(a). Section 602(a) prohibits the importation of copyrighted works acquired outside the United States without permission from the copyright owner, and declares such importation an infringement of the exclusive right to distribute provided in § 106(3). Swatch claims that Defendant infringed its copyrights by acquiring its watches abroad, importing and selling them in the United States without its permission.

Defendant does not contest the validity of Swatch's copyrights or the allegation that it imports and sells Swatch watches without consent. Instead, Defendant asserts that its importation and sale of the watches is lawful under the first sale doctrine applicable to copyrighted works, codified in 17 U.S.C. § 109(a). That section provides that "the owner of a particular copy ... lawfully made under this title .. is entitled, without the authority of the copyright owner, to sell or otherwise dispose of [the copyrighted work]." Relying on *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 145, 118 S.Ct. 1125, 140 L.Ed.2d 254 (1998), Defendant argues that the first sale doctrine set forth in § 109(a) bars all claims of copyright infringement against lawful owners who resell copyrighted works—regardless of the importation protection provision of § 602(a). Defendant's reading of *Quality King*, however, is overly broad.

In *Quality King*, the U.S. Supreme Court applied the first sale doctrine to bar a claim of copyright infringement against an unauthorized importer of copyrighted hair care products. The copyright owner was a California manufacturer of hair care products which sold the products to distributors in the United States who agreed to resell the goods within limited geographic areas around the world. To ac-

count for different levels of demand, the goods were priced differently in different areas. Eventually, a distributor of the goods in Malta sold the goods to the defendant importer. The defendant importer subsequently imported the goods *back* to the United States, to be sold at discounted prices to unauthorized retailers.

The manufacturer of the hair care products was initially successful in obtaining summary judgment and an injunction against the unauthorized importer based on § 602(a). The district court found that § 602(a)'s grant of exclusive importation rights would be meaningless if subject to § 109(a)'s first sale protection. The Ninth Circuit affirmed the district court's decision. The Supreme Court, however, held that the first sale doctrine codified in § 109(a) *did* apply under the circumstances of *Quality King*. The Court held that the defendant importer of the hair care products was the owner of the products and, as such, was authorized to resell the same according to § 109(a).

There is, however, a very important difference between the facts of *Quality King* and those now before this Court. The copyrighted works in *Quality King* were manufactured and sold in the United States, exported abroad, purchased by the defendant and imported back to the United States, in what Justice Ginsburg referred to as a "round trip" journey. In her concurring opinion, Justice Ginsburg expressly acknowledged that the Court's decision did not resolve cases in which the allegedly infringing imports were manufactured and first sold abroad. *Id.* at 154, 118 S.Ct. 1125 (Ginsburg, J., concurring). This is because § 109(a) only protects resales of works "lawfully made under this title," which means copyrighted works legally made and sold in the United States. *Id.* (citations omitted). Thus, in *Quality King*, § 109(a) protected the unauthorized importation of copyrighted goods imported

because the goods were made and first sold in the United States. Had the goods not been manufactured domestically, § 109(a) would not have applied.

The wristwatches at issue here were manufactured and first sold abroad. Therefore, the Court's opinion in *Quality King* does not protect Defendant from a claimed violation of § 602(a). The Court in *Quality King* expressly recognized that the importation protection provision in § 602(a) applies to copies that are not " 'lawfully made' under the United States Copyright Act, but under the law of some other country." *Id.* at 147, 118 S.Ct. 1125. Under Section 602(a), Swatch had the right to prevent these products from entering the United States and competing with the identical products authorized to be distributed here. *See Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477 (9th Cir.1994).

In *Givenchy*, summary judgment was entered on a § 602(a) infringement claim against a retailer which sold copyrighted products imported without the authorization of the copyright owner. The plaintiff in *Givenchy* was the U.S. subsidiary of a foreign perfume manufacturer and holder of the copyright in the box design for a certain perfume. The defendant was a retailer which had purchased amounts of the perfume from an unauthorized third-party importer and was selling the perfume in its retail outlets. The retailer's only defense to the plaintiff's infringement claim was based on the first sale doctrine codified in § 109(a). The Ninth Circuit refused to apply the first sale doctrine to negate the importation right granted to Givenchy in § 602(a). It reasoned, as would the Supreme Court in *Quality King* several years later, that the first sale protection of § 109(a) applies only to copies first sold in the United States—*not* to those manufactured and first sold abroad.

*Id.* at 481. Because Defendant relies exclusively on the first sale protection of § 109(a), without contesting the validity of Plaintiffs' copyrights or other relevant facts related to Plaintiff's § 602(a) claim of copyright infringement, summary judgment in favor of Plaintiffs is appropriate on Count VII.

Accordingly, it is

ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED with respect to Counts I and V of the First Amended Complaint. It is further.

ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED with respect to Count VII of the First Amended Complaint.