[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10381

Non-Argument Calendar

_____

NUTRADOSE LABS, LLC,
a Florida limited liability company,

Plaintiff-Appellee,

*versus*

RAIMUNDO SANTAMARTA,
an individual,

Defendant-Appellant,

BIO DOSE PHARMA, LLC,
Florida limited liability company,

2                      Opinion of the Court                      24-10381

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-20780-BB

_____

Before ROSENBAUM, NEWSOM, and ABUDU, Circuit Judges.

PER CURIAM:

In the district court, Nutradose sued Bio Dose and Bio Dose's creator, Raimundo Santamarta, for trademark infringement under the Lanham Act. The district court ruled for Nutradose and found that Santamarta was personally liable for Bio Dose's trademark infringement. On appeal, Santamarta argues that the district court erred in rejecting two of his affirmative defenses. After careful consideration, we affirm the district court's judgment.[1]

**I**

The trademark at issue in this case is the GlutaDose Mark. In 2019, a company called Unipharma registered the GlutaDose Mark. That year, Unipharma granted Bio Dose a limited, royalty-

---

[1] "On appeal of a district court order from a bench trial, we review the [district] court's conclusions of law de novo and its findings of fact for clear error." *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir. 2005) (emphasis omitted).

24-10381              Opinion of the Court                3

free, and exclusive license to use the GlutaDose Mark. This arrangement was governed by the "Trademark License Agreement." In 2020, Unipharma filed for Chapter 11 bankruptcy, and both Bio Dose and Santamarta participated in the bankruptcy as creditors. As part of the bankruptcy, Unipharma sold its assets, including the GlutaDose Mark, to New Vision. This sale was governed by the "Asset Purchase Agreement." New Vision then sold the GlutaDose Mark to Nutradose. Meanwhile, Santamarta had been using the GlutaDose Mark without the permission of either New Vision or Nutradose.

Consequently, Nutradose sued Bio Dose and Santamarta for trademark infringement under the Lanham Act. In response, Bio Dose and Santamarta raised numerous affirmative defenses. On appeal, Santamarta reprises two of these defenses.[2] First, he maintains that Bio Dose had a license to sell GlutaDose products. Specifically, he argues that the Trademark License Agreement survived the bankruptcy sale, and thereby permitted Bio Dose to use the GlutaDose Mark. Second, he claims that because Bio Dose was a lawful reseller of genuine GlutaDose products, Nutradose's trademark-infringement claim was barred by the first-sale doctrine. We address each claim in turn.

---

[2] Initially, both Santamarta and Bio Dose appealed, but we dismissed Bio Dose's appeal.

## II

First, the "license" defense.  Santamarta argues that the Trademark License Agreement authorized Bio Dose to use the GlutaDose Mark.  Crucial to this argument is the premise that the Trademark License Agreement survived the bankruptcy and passed to Nutradose.  The district court rejected this premise.  We agree.

After the bankruptcy sale ended, the only liabilities that passed to New Vision were the "Assumed Liabilities," a term defined by the Asset Purchase Agreement.  Any liabilities other than these "Assumed Liabilities" were "Excluded Liabilities."  All "Excluded Liabilities" were automatically extinguished after closing of the sale.  The Trademark License Agreement was *not* among the "Assumed Liabilities" and was therefore an "Excluded Liability."  Neither party disputes this.  So it follows that New Vision did not assume the Trademark License Agreement.  Rather, the Trademark License Agreement was automatically extinguished, and, having been extinguished, it cannot have passed to Nutradose.

Santamarta attempts to evade this straightforward reading of the Asset Purchase Agreement in two different ways.  First, he argues that the Trademark License Agreement was not a liability at all because it imposed obligations only on Bio Dose—not on Unipharma.  That is incorrect.  The Trademark License Agreement obligated Unipharma to refrain from licensing the GlutaDose Mark to any entity other than Bio Dose.

Next, Santamarta points to two "carveouts" in the Asset Purchase Agreement that, in his view, confirm the survival of the Trademark License Agreement. But neither provision is on point. The first one, Schedule 4.9(d), provided that Bio Dose's continued use of Unipharma's intellectual property, including the GlutaDose Mark, was immaterial to the bankruptcy sale. Santamarta views this acknowledgment of immateriality as an acknowledgement that Bio Dose's continued use of the GlutaDose Mark was not trademark infringement. But materiality is orthogonal to infringement. By acknowledging that Bio Dose's use of the GlutaDose Mark was immaterial, Schedule 4.9(d) ensured only that the parties could not point to Bio Dose's trademark infringement as justification for terminating the sale.

The second provision on which Santamarta relies—Provision 6.12—is similarly off-base. Provision 6.12 stated that, prior to the sale's closing, Unipharma would terminate all prior arrangements or agreements with Bio Dose and use commercially reasonable efforts to enter into a new contract with Bio Dose. Santamarta sees this provision as duplicative of the Asset Purchase Agreement's "Excluded Liabilities" provision, Provision 2.4. He therefore concludes that the "only reasonable, sensible construction is to omit the Bio Dose agreements, specifically the Trademark License Agreement, from the general grouping of liabilities under the [Asset Purchase Agreement]." To put it differently, Santamarta is arguing that, because of its redundance with Provision 6.12, Provision 2.4 does not apply to the Trademark License Agreement.

Santamarta is mistaken. Provision 6.12 is not duplicative of Provision 2.4. Not all of the arrangements between Unipharma and Bio Dose would necessarily constitute "liabilities" within the meaning of the Asset Purchase Agreement. Any arrangements that imposed an obligation on Bio Dose—but not on Unipharma—would fall within Provision 6.12 but not within Provision 2.4. Moreover, Provision 6.12 is a pre-closing covenant, whereas Provision 2.4 prescribes post-closing events.

In short, Provisions 6.12 and 2.4 are not mutually exclusive. It can be true that, before closing, Unipharma was obligated to terminate and renegotiate its pre-existing arrangements with Bio Dose. And it can nevertheless be true that, after closing, regardless of whether Unipharma performed its pre-closing obligation, some of its agreements with Bio Dose—including the Trademark License Agreement—were automatically extinguished.

\* \* \*

Accordingly, the district court did not err in rejecting Santamarta's "license" defense.

**III**

Second, the first-sale doctrine. Pursuant to the first-sale doctrine, "[t]he resale of genuine trademarked goods generally does not constitute infringement." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001). Santamarta contends that, because Bio Dose was selling genuine GlutaDose Products, it did not infringe on the GlutaDose Mark.

The district court held that the first-sale doctrine did not apply to Santamarta for two reasons: (1) Under *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 153 (3d Cir. 1984), ex-licensees, such as Bio Dose, are not permitted to sell off their inventory; and (2) "falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship," as Bio Dose did, "constitutes infringement." *Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200, 1227 (S.D. Fla. 2024) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983)) (emphasis omitted).

On appeal, Santamarta disputes both justifications. First, he counters that *Bill Blass* applies only to *manufacturer* ex-licensees—not to *distributor* ex-licensees, such as Bio Dose.[3] But no part of *Bill Blass* suggests that its holding is limited in this way, nor does Santamarta successfully explain why such a distinction would be meaningful. That the ex-licensee in *Bill Blass* was a manufacturer, rather than a distributor, is wholly incidental to the case's holding.

Next, Santamarta contends that, because the GlutaDose products sold by Bio Dose were genuine, Bio Dose's misrepresentations do not foreclose the first-sale doctrine. To justify his claim, Santamarta relies primarily on one case, *Davidoff & CIE, S.A. v. PLD International Corp.*, 263 F.3d 1297 (11th Cir. 2001). But Santamarta fails to appreciate the crucial differences between his own case and

---

[3] At this time, we need not determine whether the holding of this out-of-circuit case is binding on us. Rather, we are ruling that Santamarta's argument fails on its own terms.

*Davidoff & CIE, S.A.*  There, we explained:  "The resale of genuine trademarked goods generally does not constitute infringement. This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale."  *Davidoff & CIE, S.A.*, 263 F.3d at 1301 (citations omitted). Here, however, the district court ruled that Bio Dose's misrepresentations *did* confuse consumers about the origin of the trademarked goods.  Specifically, it found that Bio Dose's website did "not indicate that Nutradose, versus Bio Dose, originates GlutaDose Products; in other words, the [w]ebsite [did] not identify Bio Dose as a reseller of Nutradose products."  *Nutradose*, 710 F. Supp. 3d at 1211.  "For that reason," the court concluded, "the [w]ebsite create[d] the impression that GlutaDose Products originate from Bio Dose."  *Id.*  Accordingly, *Davidoff & CIE, S.A.* does not save Santamarta's reliance on the first-sale doctrine, and the district court did not err in rejecting this defense.

## IV

For the foregoing reasons, we **AFFIRM** the judgment of the district court.