TOYS "R" US, INC., and Geoffrey,
Inc., Plaintiffs,

v.

Richard FEINBERG, an individual, and
Guns Are We, an entity of undetermined
status formerly known as Guns Are Us,
Defendants.

No. 98 Civ. 2780(AGS).

United States District Court,
S.D. New York.

Oct. 28, 1998.

Paul Fields, Kandis M. Kahn, Darby & Darby P.C., New York City, for plaintiffs.

Richard Feinberg, defendant pro se.

## ORDER

SCHWARTZ, District Judge.

Plaintiffs Toys "R" Us, Inc. and Geoffrey, Inc., licensee and owner respectively of the Toys "R" Us trademark, bring this action against defendants, appearing *pro se,* in connection with defendants' use of the trade names "Guns Are Us," "Guns are We," and the internet domain name "gunsareus.com." The action states claims arising under the Lanham Act, 15 U.S.C. §§ 1114(1), and 1125(a), and New York commercial and trademark law. Plaintiffs move for summary judgment. For the reasons stated herein, plaintiffs' motion is denied in its entirety, and summary judgment is granted in favor of defendants.

## BACKGROUND

Plaintiff Geoffrey, Inc. is a wholly owned subsidiary of Toys "R" Us, Inc. (Complaint at ¶ 3.) Geoffrey owns the rights to the Toys "R" Us and related trademarks, licensing their use to Toys "R" Us and its various subsidiaries. (*Id.* at ¶ 11.) Plaintiffs have been making use of the Toys "R" Us mark for over 35 years. (Plaintiffs' Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1") at ¶ 1.) The range of products sold in Toys "R" Us stores has grown and now includes, in addition to toys, over 11,000 different items such as clothing, lamps, telephones, stereos, calculators, computers, audio and visual tapes, pools, and sporting goods. (*Id.* at ¶ 2.) The Toys "R" Us mark is prominently featured in national and regional advertising, and throughout Toys "R" Us stores. (*Id.* at ¶ 4.) Since 1983, Toys "R" Us has owned and operated a chain of retail children's clothing stores under the mark Kids "R" Us. (*Id.* at ¶ 5.) There are 698 Toys

"R" Us stores in the United States, and 443 in foreign countries, with annual sales over $11 billion. (*Id.* at ¶¶ 6, 7, 11.) As a result of over $100 million in advertising annually, and an intensive effort to maintain high quality goods and services, Toys "R" Us has become one of the most famous and widely known marks in the world. (*Id.* at ¶¶ 9, 10, 12.)

Toys "R" Us has also worked diligently to maintain its reputation as a family oriented store with a wholesome image. (*Id.* at ¶ 15.) Toys "R" Us has sought to project the image of a store where children are the first concern, and was one of the first stores to refuse to carry or sell toy guns—a fact widely publicized. (*Id.* at ¶ 16.)

Plaintiff Geoffrey, Inc., in addition to the Toys "R" Us mark which it licenses to its co-plaintiff, owns a number of federal trademark registrations containing the phrase " 'R' Us." (*Id.* at ¶ 18.) For example, Geoffrey has registered Babies "R" Us, Bikes "R" Us, Books "R" Us, Computers "R" Us, Dolls "R" Us, Games "R" Us, Mathematics "R" Us, Movies "R" Us, Parties "R" Us, Portraits "R" Us, Shoes "R" Us, and Sports "R" Us. (*Id.* at ¶ 18.) Plaintiffs also own common law rights over various other "R" Us marks, such as Treats "R" Us, Gifts "R" Us, and 1–800–Toys–R–Us, by virtue of the exclusive use of those marks. (*Id.* at ¶ 19.)

Finally, Geoffrey also owns various internet domain names including tru.com, toysrus.com, kidsrus.com, boysrus.com, dollsrus.com, galsrus.com, girlsrus.com, babiesrus.com, computersrus.com, guysrus.com, mathematicsrus.com, moviesrus.com, opportunitiesrus.com, partiesrus.com, poolsrus.com, portraitsrus.com, racersrus.com, supervaluesrus.com, treatsrus.com, tykesrus.com, sportsrus.com, giftsrus.com, and toysrusregistry.com. (*Id.* at ¶ 20.) Toys "R" Us operates an internet web site located at www.toysrus.com. (*Id.* at ¶ 21.)

Plaintiffs make use of various of these marks and others through ownership or licensing, resulting in the extensive use of the "R" Us family of marks, under the control and supervision of plaintiffs.

Defendant Richard Feinberg is the sole proprietor of codefendant We Are Guns, a firearms store doing business at 15 Farm Lane, Norton, Massachusetts. Feinberg runs his business predominantly in Massachusetts, but also sells products on the internet and has, "on occasion, shipped products to New York firearms dealers." (Answer at ¶ 7.) Feinberg's business had been previously known as "Guns Are Us." (Complaint, ¶ 6; Answer, ¶ 6.) The business's name was changed to "Guns are We" and then to "We Are Guns" in response to objections by plaintiffs. (*Id.;* Pl.'s 56.1 at ¶ 33.) Feinberg maintains a website located at www.gunsareus.com and has registered the domain name "gunsareus.com" with InterNIC. (Pl.'s 56.1 at ¶¶ 35, 36.)

Plaintiffs brought this suit seeking damages and an injunction prohibiting defendants from operating the website at gunsareus.com and from reverting back to either of the trade names "Guns are Us" or "Guns Are We."

## DISCUSSION

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure ("Fed.R.Civ. P.") 56(c). The moving party bears the initial burden of showing the absence of any genuine issue of material fact, which may be met either by affirmative evidence or by pointing out a lack of evidence pertaining to an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In viewing the evidence presented on a summary judgment motion, "the inferences to be drawn from the underlying facts contained in affidavits, pleadings, depositions, answers to interrogatories, and admissions, must be viewed in the light most favorable to the party opposing the motion." *Fling v. Hollywood Travel & Tours,* 765 F.Supp. 1302, 1304 (N.D.Ohio 1990) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, speculative and conclusory allegations by the non-movant are insufficient to prevent a sum-

mary judgment motion from being granted. *Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir. 1995). The non-movant is required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 582, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When deciding a summary judgment motion, the Court is not restricted to either granting or denying the motion with respect to the moving party. Under certain circumstances, the Court is entitled, sua sponte, to grant summary judgment to the non-moving party. *See Local 33, Intern. Hod Carriers Bldg. & Common Laborers' Union of America v. Mason Tenders Dist. Council of Greater New York,* 291 F.2d 496, 505 (2d Cir.1961). The Court may take this course of action when the papers, affidavits and other proofs submitted by the parties illustrate that there are no disputed issues of material fact and that judgment as a matter of law is required for the non-moving party. *See Id.*

### I. The Requested Injunction Against the Names "Guns Are Us" and "Guns Are We."

■ Although defendants have changed both the trade name of the firearms shop and of the website to "We Are Guns," plaintiffs request that this Court enjoin defendants from returning to the previously-used names of "Guns Are Us" and "Guns Are We." A federal court's power to hear a particular case, and to grant injunctive relief can survive a discontinuance of the illegal conduct. *See Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co.,* 242 U.S. 202, 37 S.Ct. 105, 61 L.Ed. 248, (1916) Under certain circumstances, a suit for an injunction may be maintained in order to prevent future violations. *See Swift & Co. v. United States,* 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928). However, the party requesting such relief must show the court that the relief is needed. "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

■ The Court finds no such danger of a recurrence of illegal conduct, because it is unlikely that the defendant will change his trade name back to "Guns Are Us" or "Guns Are We." Mr. Feinberg has changed the name voluntarily, and no doubt has no interest in continually changing the name of his proprietorship, and, potentially, inciting further litigation by plaintiffs which defendant, a small retail store, can ill afford. Should the names "Guns Are Us" or "Guns Are We" be used again by defendants, this ruling would not be a bar to another suit by plaintiffs pursuing injunctive relief against those names. Until then, this Court must take care not to issue an "advisory opinion." *See Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

### II. The Requested Injunction Against the Domain Name "gunsareus.com"

Plaintiffs do not challenge the defendants' use of the trade name "We Are Guns" at the store or on the website. Therefore, the only case or controversy that remains at issue is defendants' use of the domain name gunsareus.com.

### A. Plaintiff's Counts I, II and III

■ The Court finds an absence of any material issue of fact with regard to the first three counts of plaintiffs' complaint, (1) federal trademark infringement, (2) federal false designation of origin, and (3) New York common law infringement and unfair competition. All three of these claims require a demonstration of "likelihood of confusion" in order to succeed. (Plaintiff's Memorandum of Law in Support of Summary Judgment at 8.) *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993); *Clinique Laboratories, Inc. v. Dep Corp.,* 945 F.Supp. 547, 550, 558 n. 13 (S.D.N.Y.1996); *Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236, 249 (S.D.N.Y.1990).

Plaintiffs are required to demonstrate that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *See Gruner,* 991 F.2d at 1077,

quoting *Western Pub. Co. v. Rose Art Industries, Inc.*, 910 F.2d 57, 59 (2d Cir.1990). The record on this motion reflects the absence of any likelihood of confusion between defendants' and plaintiffs' products.

Further, the Court finds any allegation of such confusion by consumers to be unlikely. It is doubtful that prudent purchasers would be misled into thinking that Toys "R" Us sponsored, approved, or endorsed defendants' firearm products, sold out of a small shop in Massachusetts and on his website. Application of the *Polaroid* factors confirms this conclusion. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). The eight factors used by the *Polaroid* court in determining any likelihood of confusion are: (1) the strength of plaintiff's mark, (2) the degree of similarity between the marks, (3) the competitive proximity of the products or services, (4) the existence of actual confusion, (5) the likelihood that plaintiff will enter defendant's product market and "bridge the gap," (6) the defendant's good faith in adopting its mark, (7) the quality of defendant's product, and (8) the sophistication of the purchasers. *See Id.*

The Court finds that, under factor (2), the marks are not similar. The absence of the use of plaintiffs' trademark "R" makes any association with plaintiffs' business implausible. Plaintiffs incorrectly state that "defendants have taken one of Plaintiff's most famous marks, Toys 'R' Us, and merely replaced the term 'Toys' with 'Guns'." (Pl.'s Mem. Law at 9.) However, there is no allegation that defendant Feinberg ever called his business "Guns 'R' Us" but rather "Guns Are Us," and currently uses the internet domain name "gunsareus.com" rather than "gunsrus.com." (Complaint at ¶ 53.)

Factor (3), competitive proximity, weighs heavily in defendants' favor. Plaintiffs sell mostly products oriented towards children such as toys and childrens' clothes. The sale of firearms could hardly be further from plaintiffs' market. Further, the image of plaintiffs as a family-oriented and children-friendly business, (Pl.'s 56.1 at ¶¶ 23 – 26), makes any likelihood of confusion, if anything, more remote. Plaintiffs even note that Toys "R" Us recently decided not to sell toy guns at its stores. (*Id.* at ¶ 23.) The Court is thus convinced that factor (5), the likelihood of plaintiffs entering defendants' product market, also weighs heavily towards the defendants.

The Court also finds that factor (8), consumer sophistication, inclines heavily towards a finding of no likelihood of confusion. The consumers exposed to defendants' marketing are sophisticated enough to distinguish between plaintiffs' and defendants' products. Defendant's sales and marketing efforts outside Massachusetts are directed towards firearms dealers. (Defendants' Response to Plaintiff's First Request for Admissions at ¶ 12). Consumers looking at defendants' website are internet users and, presumably, sophisticated. *See Planned Parenthood Federation of America Inc. v. Bucci*, 42 U.S.P.Q.2d 1430, 1439 (S.D.N.Y.1997). The remaining *Polaroid* factors do not weigh heavily in either direction.

The preceding discussion illustrates why this case is a far cry from *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189 (E.D.N.Y.1983). In *Canarsie*, the defendant's shop Kids "R" Us competed in a similar product area as Toys "R" Us, and also made use of the single letter "R." Under those circumstances, it becomes more likely that a prudent consumer might believe that Kids "R" Us was sponsored by or affiliated with Toys "R" Us. This is simply not comparable, however, to a small, unincorporated firearms shop in Massachusetts doing business in a product area that no one would associate with plaintiffs' business, and without using plaintiffs' trademark single letter "R."

For the same reasons, the Court is convinced that there was no intentional copying of the Toys "R" Us mark such that "the second comer [should] be presumed to have intended to create a confusing similarity of appearance and ... be presumed to have succeeded." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980). Here, whatever intentional copying existed was not done with the intent to deceive the public or to divert business from plaintiffs.

In sum, the Court finds an absence of any material issue of fact with regard to the likelihood of purchasers being confused as to the source of defendants' products. Because likelihood of confusion is a required element of plaintiffs' first three Counts, the Court finds that the defendants are entitled to judgment as a matter of law, and awards summary judgment in favor of the defendants on Counts I, II, and III.

## B. Plaintiff's Dilution Claims (Counts IV and V)

■ The Court finds no issue of material fact as to whether defendants' use of the internet domain name gunsareus.com can serve as the basis for a dilution claim under either Count IV of the complaint, § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), or Count V of the Complaint, New York's Anti-dilution Act, New York General Business Law § 368–d.[1] There are two types of dilution claims, (1) blurring, and (2) tarnishment. As a matter of law, plaintiff has failed to present a prima facie case under either theory.

■ The owner of a famous mark is entitled to an injunction "against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." *See Toys "R" Us, Inc. v. Akkaoui,* 1996 WL 772709 (N.D.Cal., Oct.29, 1996) (barring the use by defendants of the name "Adults "R" Us"), *citing* 15 U.S.C. § 1125(c)(1).[2] Dilution does not depend on a showing of either likelihood of confusion between the marks, or competition between the owner of the mark and other parties. *See* 15 U.S.C. § 1127.

■ First, plaintiffs have failed to establish the existence of a triable issue of fact as to whether maintaining a website with the domain name "gunsareus.com" will blur, or lessen the capacity of plaintiffs' marks to identify and distinguish their goods or services. While it is conceivable that the proliferation of trade names ending in " 'R' Us," unassociated with plaintiffs, might cause such blurring, this case is nowhere near such a situation. This case involves a website that merely uses the letters "gunsareus" as its internet domain name. Defendants neither make use of the single letter "R" nor do they space or color the letters and words in a manner remotely related to plaintiffs. The name "gunsareus" appears in all lower case letters with no spaces in between the letters. The Court finds that the use of such an internet domain name, without naming the website itself "Guns 'R' Us" or "Guns Are Us," will not, as a matter of law, blur the distinctiveness of plaintiffs' "R" Us family of marks.

■ Second, the Court also finds an absence of a triable issue of fact as to whether defendants have diluted plaintiffs' mark by tarnishment. Dilution by tarnishment occurs when "a famous mark is improperly associated with an inferior or offensive product or service." *See Ringling Bros.,* 937 F.Supp. at 209 (*citing Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 506 (2d Cir. 1996). Courts have found such negative connotations in situations where a mark was used in the context of drugs, nudity, and sex. *See e.g., Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 467 F.Supp. 366 (S.D.N.Y.1979) (pornography); *Coca–Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183 (E.D.N.Y.1972) (cocaine); *Eastman Kodak Co. v. Rakow,* 739 F.Supp. 116, 118 (W.D.N.Y.1989) (crude comedy routine).

The Court, however, finds it unlikely that defendants' website will be associated with plaintiffs' stores and products at all. As stated earlier, the differing product areas, absence of the single letter "R" in the name, and peculiarities of an internet domain name make any association with plaintiffs' products extremely unlikely. In addition, defendant does not sell to the general public outside of

---

**1.** This provision was recently re-numbered to General Business Law § 360.

**2.** Federal and New York antidilution laws are very similar in this context. *See e.g., Exquisite Form Industries, Inc. v. Exquisite Fabrics of Lon-*

*don,* 378 F.Supp. 403, 414 (S.D.N.Y.1974). Unless otherwise noted, the arguments in this opinion regarding dilution apply to both the Lanham Act and New York state anti-dilution provision.

Massachusetts. Its internet site is used almost exclusively to sell to firearms dealers.

In sum, the parties have demonstrated an absence of any material issues of fact, requiring judgment to be issued as a matter of law. Defendants' decision to cease using the trade names "Guns Are Us" and "Guns Are We" eliminates the need or basis for the Court to decide whether those trade names infringe on or dilute plaintiffs marks. Defendants' website, entitled Guns Are We, but with the domain name gunsareus.com, does not violate any of plaintiffs' rights under federal or state trademark and unfair competition law.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is denied in its entirety, and summary judgment is granted in favor of defendants. The Clerk of the Court is directed to enter judgment dismissing the complaint and to close the file in this action.

SO ORDERED.