**BRAIN PHARMA, LLC, a Florida limited liability company, Plaintiff,**

v.

**Javier SCALINI, et al., Defendants.**

Case No. 12–60132–CIV.

United States District Court, S.D. Florida.

April 30, 2012.

Michael James Henderson, Cary Alan Lubetsky, Krinzman, Huss & Lubetsky, Miami, FL, for Plaintiff.

Brian W. Toth, Sanford Lewis Bohrer, Holland & Knight, Miami, FL, for Defendants.

## *ORDER GRANTING DEFENDANTS' MOTION TO DISMISS*

JAMES I. COHN, District Judge.

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Complaint [DE 21] ("Motion"). The Court has considered the Motion, Plaintiff's Response [DE 26] ("Response"), Defendants' Reply [DE 28] ("Reply"), and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Brain Pharma, LLC ("Plaintiff" or "BPI") filed a complaint against Defendants Javier Scalini individually and d/b/a Allstarhealth.com, Fernando Scalini individually and d/b/a Allstarhealth.com, Javier Scalini and Fernando Scalini, jointly and severally, d/b/a Allstarhealth.com, (collectively "Allstarhealth") and ADF, Inc. d/b/a Advantis Nutrition ("Advantis") (collectively "Defendants") on January 25, 2012. *See* Complaint [DE 1]. The Complaint accuses Defendants of several violations of the Lanham Act, 15 U.S.C. §§ 1051–1141n, and equivalent Florida statutes. Compl. ¶ 1. Specifically, Plaintiff, a sports nutrition company which manufactures and sells dietary and nutritional supplements, contends that it has used the trademark logo BPI to market its products since January 28, 2009. *Id.* ¶¶ 9–10. Plaintiff alleges that Allstarhealth "has misrepresented itself to the public, through its website, as an authorized BPI agent." *Id.* ¶ 20. Plaintiff also alleges that Advantis "is selling and distributing BPI's products to retailers and end users unaffiliated with BPI without authorization." *Id.* ¶ 21. Because the BPI products Defendants sell are not inspected by BPI, Plaintiff contends that Defendants "are not selling genuine BPI products." *Id.* ¶ 22.

As a result of Defendants' actions, Plaintiff claims that its BPI trademark has been infringed pursuant to 15 U.S.C. § 1125(a) (Count I), Defendants have engaged in unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a) (Count II), and that its trademark has been diluted pursuant to 15 U.S.C. § 1125(c) (Count III). Plaintiff also brings claims for injury to business reputation and dilution pursuant to Florida Statutes § 495.151 (Count IV), trademark infringement of an unregistered mark under Flori-

da common law (Count V), and unfair competition under Florida common law (Count VI). Defendants have now filed a motion to dismiss which seeks to dismiss all counts of the Complaint on the grounds that Plaintiff has failed to state a claim.

## II. DISCUSSION

### A. *Legal Standard For Motion to Dismiss.*

Under Fed.R.Civ.P. 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Glover v. Liggett Grp., Inc.,* 459 F.3d 1304, 1308 (11th Cir.2006). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Id.* Accordingly, a well pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" *Id.* at 556, 127 S.Ct. 1955.

### B. *Trademark Infringement under 15 U.S.C. § 1125(a) (Count I).*

Defendants move to dismiss Plaintiff's trademark infringement count on the grounds that their mere resale of Plaintiff's products does not constitute trademark infringement. Motion at 3. According to Defendants, Plaintiff's conclusory statement that Defendants "are not selling genuine BPI products" is insufficient to avoid application of the first sale doctrine. *Id.* at 4 (citing Compl. ¶ 22). Defendants also argue that the this count must be dismissed because the Complaint is devoid of any allegations regarding what Plaintiff's quality control measures are and how Defendants failed to meet them. *Id.* at 5. In its Response, Plaintiff argues that the first sale doctrine is inapplicable here "because Defendants have taken actions beyond the scope of its protection." Response at 4. Specifically, Plaintiff states that it has alleged that "Defendants are representing themselves to the public as authorized dealers of BPI's products and creating the perception that Defendants are affiliated with BPI." *Id.* at 6 (citing Compl. ¶¶ 19–25). Plaintiff also contends that Defendants are selling its products at "excessively discounted prices." *Id.*

■ Title 15 U.S.C. § 1125(a) provides that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geograph-

ic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a). To establish a prima facie case for trademark infringement, "a plaintiff must show (1) that the plaintiff had enforceable ... rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir.2011) (internal quotations and citations omitted).

▬ Under the "first sale doctrine," the resale of genuine trademarked goods does not generally constitute trademark infringement. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir.2001). Thus, even if a subsequent sale of a trademarked good is made without the trademark owner's consent, the resale of a genuine good does not violate the Lanham Act. *Id.* at 1302. However, the first sale doctrine does not apply "when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Id.* A material difference is a difference that consumers consider relevant to a decision about whether to purchase a product. *Id.* "Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products." *TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd.*, 843 F.Supp.2d 1284, 1297 (S.D.Fla.2012). The Eleventh Circuit has held that the resale of a trademarked product that has been altered, resulting in physical differences in the product, is a material difference that can create a likelihood of consumer confusion. *Davidoff & CIE, S.A.*, 263 F.3d at 1303 (affirming district court's finding that etching the

glass of perfume bottle to remove the batch code degraded the appearance of the product and created a likelihood of confusion).

The parties do not dispute that if Defendants were merely reselling Plaintiff's genuine products, the first sale doctrine would bar any trademark infringement claim. Motion at 3; Response at 4. Thus, the Court must determine whether Plaintiff has sufficiently plead other conduct on the part of Defendants which could constitute trademark infringement. Defendants argue that Plaintiff's allegations that products sold by Defendants "are not inspected ... prior to sale and that they are not distributed in accordance with the quality control measures BPI has in place for sale of its goods" are conclusory statements that are insufficient to avoid the first sale doctrine. Motion at 4 (quoting Compl. ¶ 22) (internal quotations omitted). Defendants point out that "BPI has not alleged that it has not inspected the products at all." *Id.* Rather, Plaintiff only alleges that it did not inspect its products "prior to sale." *Id.* (quoting Compl. ¶ 22). According to Defendants, this is insufficient to state a claim for trademark infringement. *See id.* Additionally, Defendants contend that Plaintiff's allegations regarding their failure to abide by Plaintiff's quality control measures are conclusory because "BPI alleges no facts showing how Defendants fail to distribute the products in accordance with BPI's quality control standards." *Id.* at 5.

In its Response, Plaintiff argues that it has stated a claim for trademark infringement because it alleges that "Defendants are representing themselves to the public as authorized dealers of BPI's products and creating the perception that Defendants are affiliated with BPI." Response at 6 (citing Compl. ¶¶ 19–25). Plaintiff also points to its allegation that Allstarhealth

advertises and sells BPI products for less than 50% below retail prices. *Id.* (citing Compl. ¶ 20).[1] Finally, Plaintiff states that it has "alleged facts as to how Defendants have created the misimpression to consumers that they are favored or authorized retailers for BPI products." *Id.* at 7.

■ The Court agrees with Defendants that, as currently plead, Plaintiff fails to state a claim for trademark infringement. First, the Court agrees with Defendants that Plaintiff's Complaint does not properly allege that "Allstarhealth has misrepresented itself to the public, through its website, as an authorized BPI agent." Reply at 2; Compl. ¶ 20. Plaintiff has attached a printout of the BPI products sold at www.allstarhealth.com to the Complaint as Exhibit C. Compl. ¶ 20. Rather than supporting Plaintiff's allegation that Allstarhealth has represented itself as an authorized BPI agent, this exhibit only establishes that Defendants sold BPI products on their website. Exhibit C to the Complaint [DE 1–7].[2] Even drawing all reasonable inferences in Plaintiff's favor, the mere allegation that Allstarhealth misrepresented that it was an authorized BPI agent cannot support a trademark infringement claim. *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir.1995) ("When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute.")

·The very cases discussed by Plaintiff in its response supports this conclusion. In *Australian Gold, Inc. v. Hatfield*, for example, the Tenth Circuit found that the first sale doctrine did not apply because "Defendant's intentional use of Plaintiffs' trademarks on Defendants' Web sites, in the metatags for the Web sites, and with Overture.com constitutes more than merely displaying and stocking trademarked items." 436 F.3d at 1241. Similarly, in *PACCAR Inc. v. TeleScan Technologies, LLC*, the Sixth Circuit found the first sale doctrine was inapplicable because the defendant incorporated the plaintiff's trademarks into its domain names, thus creating "a likelihood of confusion as to the source or affiliation of the web sites [that] goes beyond simply stocking, displaying, and reselling." 319 F.3d at 257. Here, Plaintiff's mere conclusory statement that Allstarhealth represented itself as a BPI agent cannot support a trademark infringement claim. *See Iqbal*, 129 S.Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

■ Second, the Court finds that Plaintiff's allegation that Defendants are selling BPI products on their website for less than 50% below retail prices does not state a trademark infringement claim. *See* Response at 6; Compl. ¶ 20. As Defendants

---

1. Plaintiff argues that the three cases Defendants rely upon in their Motion are inapplicable at this stage in the proceedings because those cases did not discuss the pleading standards necessary to survive a motion to dismiss. Response at 7–8. The Court finds that this argument is without merit, especially in light of the fact that Plaintiff, in its Response, also relies upon cases that did not involve motions to dismiss. *See* Response at 5–6 (discussing *Austl. Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir.2006) (appeal of jury verdict) and *PACCAR Inc. v. TeleScan Techs.,*

*LLC*, 319 F.3d 243, 257 (6th Cir.2003) (appeal of preliminary injunction) *abrogated by KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004)).

2. The Court also agrees with Defendants that when there is a conflict between a pleading and an exhibit to a pleading, the exhibit controls. Reply at 6 (citing *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n. 6 (11th Cir.2008)).

point out, Plaintiff cites no authority for the fact that selling *genuine* trademarked products at a discount constitutes a trademark infringement claim or otherwise defeats application of the first sale doctrine. *See* Reply at 5; *cf. Osawa & Co. v. B & H Photo*, 589 F.Supp. 1163, 1173 (S.D.N.Y. 1984) (under the first sale doctrine, "a markholder may no longer control branded goods after releasing them into the stream of commerce.... Down the line retailers are free to display and advertise the branded goods. Secondhand dealers may advertise the branded merchandise for resale in competition with the sales of the markholder"), *abrogated on other grounds by Olympus Corp. v. United States*, 792 F.2d 315 (2d Cir.1986).

█ Finally, Plaintiff's allegations that the BPI products sold by Defendants are not inspected by BPI, BPI's authorized distributor, and/or dealers prior to sale and are not sold in accordance with the BPI's quality control measures are insufficient to state a claim for trademark infringement. *See* Compl. ¶ 22. Defendants concede that "[g]oods ... that do not meet the trademark owner's quality control standards will not be considered genuine goods, and their sale will constitute trademark infringement." Reply at 4–5 (quoting *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir.1994)). However, as Defendants point out, the Complaint fails to allege (1) what Plaintiff's quality control measures are and (2) how the products sold by Defendants fail to meet these quality control measures. *See Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir.1996) ("To establish a claim for trademark infringement based on failure to follow quality control standards, "[t]he trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." ").

Thus, in the absence of specific, non-conclusory factual allegations which allege that the products sold by Defendants do not meet Plaintiff's standard quality control measures, the Court finds that Plaintiff has failed to state a claim for trademark infringement. *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 304 (3d Cir.1998) (" '[Q]uality control' is not a talisman the mere utterance of which entitles the trademark owner to judgment.... Rather, the test is whether the quality control procedures established by the trademark owner are likely to result in differences between the products such that consumer confusion regarding the sponsorship of the products could injure the trademark owner's goodwill."). Thus, the Court will dismiss Count I of the Complaint and afford Plaintiff the opportunity to re-plead.

### C. Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a) (Count II).

█ Defendants also move to dismiss Count II of the Complaint for unfair competition and false designation of origin under 15 U.S.C. § 1125(a). Defendants contend that this claim should be dismissed because the first sale doctrine bars any false designation of origin claim. Motion at 7. Also, to the extent Plaintiff bases its claim on an affiliation or connection between BPI and the Defendants, Defendants contend that Plaintiff's conclusory allegations are insufficient to state a claim. *Id.* In its Response, Plaintiff states that it has met the pleading standard for an unfair competition and false designation of origin claim. Response at 9.

█ To state a claim for unfair competition and false designation of origin, "a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that con-

sumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir.2007) (internal quotations omitted). For the same reasons discussed in section B above, the Court finds that Plaintiff has failed to state a claim for unfair competition and false designation of origin. First, the Court agrees with Defendants that if they were merely reselling Plaintiff's *genuine* products, the first sale doctrine would bar Plaintiff's claim. *Davidoff & CIE, S.A.*, 263 F.3d at 1301 ("This is for the simple reason that consumers are not confused about the origin of the goods: the origin has not changed as a result of the resale."); *but see RGS Labs Int'l, Inc. v. The Sherwin–Williams Co.*, No. 09–14242–CIV, 2010 WL 317778, at *3 (S.D.Fla. Jan. 11, 2010) (plaintiff stated a claim for false designation of origin where it alleged that it had prior rights in the mark, and "Defendants conducted unauthorized sales of a defective product, marketed a similar product with a similar name, and used the mark as a metatag"). Here, Plaintiff's allegation that Defendants were selling non-genuine products is conclusory because Plaintiff fails to articulate what its quality control measures are and how the products Defendants sold failed to meet these standards.

█ Second, the Court finds that Plaintiff fails to allege facts which could establish that Defendants caused consumer confusion by representing themselves as Plaintiff's authorized agent. *See* Compl. ¶¶ 20–21 & Exhibit C. Third, the Court finds that Plaintiff's allegation that Defendants were reselling Plaintiff's products below retail prices does not state a claim for unfair competition or false designation of origin. *See Osawa*, 589 F.Supp. at 1173. Accordingly, the Court will dismiss Count II and afford Plaintiff the opportunity to re-plead this claim.

## D. Trademark Dilution under 15 U.S.C. § 1125(c) (Count III).

Defendants also move to dismiss Plaintiff's claim for trademark dilution on the grounds that Plaintiff has failed to state a claim. Motion at 9. First, Defendants argue that Plaintiff has failed to allege sufficient facts to establish that the BPI mark is famous. *Id.* Second, Defendants contend that Plaintiff fails to allege any facts that Defendants began to use the BPI mark after the mark became famous. *Id.* at 10. Finally, Defendants state that they believe Plaintiff has failed to allege any facts that Defendants' use of the BPI mark is likely to cause dilution by blurring or tarnishment. *Id.* at 11. Plaintiff states that it has alleged sufficient facts to establish the elements of a trademark dilution claim and any attack by Defendants on the famousness of the BPI mark is improper in a motion to dismiss. Response at 10.

█ Title 15 U.S.C. § 1125(c) provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c). To establish a dilution claim, a plaintiff "must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F.Supp.2d 1238, 1251 (M.D.Fla.2002) (quoting *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th

Cir.1999)) (internal quotation omitted). The Lanham Act defines "dilution by blurring" as an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark" and "dilution by tarnishment" as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(B)-(C).

The Court agrees with Defendants that Plaintiff has failed to allege sufficient facts establishing that the BPI mark is famous. *See* Motion at 9. A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* Trademark dilution claims, are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Dahon N. Am., Inc. v. Hon*, No. 2:11–cv–05835–ODW (JCGx), 2012 WL 1413681, at *9 (C.D.Cal. Apr. 24, 2012) (citing *Bd. of Regents, Univ. of Texas Sys. v. KST Elec.,* *Ltd.*, 550 F.Supp.2d 657, 679 (W.D.Tex. 2008)).

■ Here, the Complaint alleges that "[a]s a result of the extensive and continuous use of the BPI Mark, including but not limited to use and association with BPI's line of products and the distinctive and strong nature of the BPI Mark, the BPI Mark became famous within the meaning of 15 U.S.C. § 1125(c)." Complaint ¶ 47. Other than such conclusory assertions, the Complaint fails to allege any facts which establish that the BPI Mark, in use only since January 28, 2009, is famous. *See* Complaint ¶ 10. Plaintiff's mere allegation that the BPI mark is famous is insufficient to state a trademark dilution claim. *See Hon*, 2012 WL 1413681, at *9 ("DNA supplies only conclusions relating to the fame of the Original DAHON, BIOLOGIC, or ECOLOGIC marks. As to the relatively obscure Original BIOLOGIC and ECOLOGIC marks, DNA's assertion that these are famous marks is highly implausible.... But whatever that level of fame is, it falls far short of the high standard required for a dilution claim. The Court greatly doubts that the general public of the United States is familiar with the Original DAHON mark. Further, the fame of the Original DAHON mark cannot compare with that of a truly famous mark, such as Coca–Cola.").[3] Accordingly, the Court will grant Defendants' motion to dismiss, but afford Plaintiff the opportunity to re-plead its trademark dilution claim.[4]

---

3. In paragraph 12 of the Complaint, Plaintiff states that "the public has come to recognize and rely upon the BPI Mark as an indication of the high quality associated with BPI's products." Complaint ¶ 12. Again, this is a conclusory statement which fails to include facts regarding how the public came to recognize the BPI mark. *See* 15 U.S.C. § 1125(c)(2)(A).

4. Although Defendants urge the Court to "decide now whether the BPI Mark is 'famous,'" the Court declines to do so at this time. *See* Motion at 10 n. 2. The Court finds that it is more appropriate to allow Plaintiff to re-plead its trademark dilution claim.

The Court also agrees with Defendants that the Complaint fails to allege that Defendants began to use the BPI mark after it became famous. *See* Motion at 11. There are no allegations in the Complaint about the date that Defendants began using the BPI mark or that this use commenced after the mark became famous. Accordingly, this pleading deficiency represents a second grounds for dismissing Plaintiff's trademark dilution claim.

 Finally, the Court agrees with Defendants that the Complaint fails to properly alleged dilution by blurring or tarnishment. *See* Motion at 11–12. "Blurring involves a diminution in the uniqueness or individuality of a mark because of its use on unrelated goods.... Tarnishing occurs when a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir.2004) (quoting *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 507 (2d Cir.1996)). Here, the Complaint alleges that "Defendants' unauthorized sale of thirteen or more BPI products at deeply discounted prices has diluted the value of the BPI Mark and diminished BPI's reputation as a provider of reliable, high quality, cutting edge products." Complaint ¶ 48. Merely reselling Plaintiff's genuine products at a discounted price does not constitute dilution by tarnishment. *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp.2d 273, 301 (S.D.N.Y. 2002) (explaining that tarnishment is likely when a lower quality product is marketed with a substantially similar mark to that of a higher quality product of the same type); *Tommy Hilfiger Licensing, Inc. v. Nature Labs., LLC*, 221 F.Supp.2d 410, 422 (S.D.N.Y.2002) (Tarnishment can occur where "[t]he reputation of the trademark is harmed and its value reduced 'because the public will associate the lack of quality or prestige in the defendant's goods with the plaintiff's unrelated goods,' or because the mark ceases to serve as a 'wholesome identifier of the owner's products.'"); *Toys R Us, Inc. v. Feinberg*, 26 F.Supp.2d 639, 644 (S.D.N.Y.1998), *rev'd on other grounds*, 201 F.3d 432 (2d Cir.1999) (noting that tarnishment can result from a mark's association with an inferior product). Indeed, if Plaintiff's dilution claim is premised solely on Defendants' resale of BPI products at discounted prices, the Court doubts whether Plaintiff can ever state a trademark dilution claim. *See Scott Fetzer Co.*, 381 F.3d at 490 ("Trademark law does not entitle markholders to control the aftermarket in marked products."); *cf. Perkins Sch. for the Blind v. Maxi–Aids, Inc.*, 274 F.Supp.2d 319, 326 (E.D.N.Y.2003) (complaint stated claim for dilution by tarnishment where it alleged that defendant distributed Perkins Braillers with an inferior warranty).

 Additionally, Plaintiff has not stated a claim for dilution by blurring because Plaintiff has not alleged that Defendants have used the BPI mark in its sale of unrelated goods or services. Rather, Plaintiff has alleged that Defendant is selling BPI products at discounted prices. *See* Complaint ¶ 48. This is not dilution by blurring. *See Scott Fetzer Co.*, 381 F.3d at 489; *Ty Inc. v. Perryman*, 306 F.3d 509, 512 (7th Cir.2002) ("Perryman is not producing a product, or a service, such as dining at a restaurant, that is distinct from any specific product; rather, she is selling the very product to which the trademark sought to be defended against her 'infringement' is attached. You can't sell a branded product without using its brand name, that is, its trademark."); *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 WL 5903508, at *8 (N.D.Ill. Nov. 22, 2011)

("Dilution by blurring ... occurs when consumers see the plaintiff's mark used on a plethora of different goods and services ... raising the possibility that the mark will lose the ability to serve as a unique identifier of the plaintiff's product.") (quotations and citations omitted). Thus, Plaintiff's failure to state facts which support dilution by blurring or tarnishment represents a third grounds for dismissing Plaintiff's trademark dilution claim.

### E. State Law Claims (Counts IV–VI).

Finally, Defendants move to dismiss Plaintiff's claims brought pursuant to Florida law. Defendants contend that because Plaintiff is unable to state claims for trademark infringement, unfair competition and false designation of origin, and trademark dilution under federal law, "it follows that none of BPI's state-law claims states a claim on which relief can be granted, either." Motion at 12.[5] The Court agrees. *See Natural Answers, Inc. v. SmithKline Beecham, Corp.*, 529 F.3d 1325, 1332–33 (11th Cir.2008) ("Since [the plaintiff] is unable to bring an unfair competition claim under the *Lanham Act*, under the theory of either false advertising or trademark infringement, it follows that the common law claims based on unfair competition and trademark infringement must fail as well."); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 801 (11th Cir. 2003) ("[T]he analysis of Florida statutory and common law claims for trademark infringement and unfair competition is the same as under the federal trademark infringement claim[.]"); *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07–80185 CIV, 2008 WL 926777, at *4 (S.D.Fla. Apr. 4, 2008) ("[B]oth the Federal and Florida state causes of action for

dilution involve the same principles."). Accordingly, the Court will dismiss Counts IV through VI, but afford Plaintiff the opportunity to re-plead these claims.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint [DE 21] is **GRANTED**. Plaintiff may file an amended complaint by no later than May 15, 2012.

---

5. Plaintiff agrees that the standard for trademark infringement and unfair competition are the same under both federal and Florida law. *See* Response at 11 (noting that "BPI's common law claims for trademark infringement and unfair competition are proper for the same reasons its federal claims pass muster.").